UNITED STATES

v.

Airman William B. DORNICK, FR 235–84–9729 United States Air Force.

ACM S25906.

U.S. Air Force Court of Military Review.

Sentence Adjudged 15 Nov. 1982.

Decided 6 July 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens, Captain John V. Sullivan Captain G. Michael Lennon, USAFR, Captain Daniel F. Doogan (Trial defense counsel submitted brief on accused's behalf).

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Captain Brenda J. Hollis.

Before HODGSON, HEMINGWAY and MILLER, Appellate Military Judges.

MILLER, Judge:

The accused was convicted at a special court-martial, military judge, sitting alone, of disrespect to a superior commissioned officer and destruction of another's private property, in violation of Articles 89 and 109, U.C.M.J., 10 U.S.C. §§ 889 and 909. He was sentenced to a bad conduct discharge, confinement at hard labor for 60 days, forfeitures of $100 per month for five months, and reduction to airman basic.

After discussing two errors alleged via an excellent brief authored by trial defense counsel, we affirm both findings and sentence.

## SEXIST FAMILIARITY AS DISRESPECT TO AN OFFICER

■ The accused was convicted of behaving himself with disrespect toward a female superior commissioned officer by saying to her, "Hi sweetheart."

We do not, here, hold that every such utterance to a superior commissioned officer by an enlisted person, regardless of attendant circumstances, constitutes a criminal offense. However, we are convinced that, absent extraordinary circumstances tending to negate the implied sexist familiarity proffered by an enlisted person to his or her superior commissioned officer by making such a remark, use of such a term constitutes disrespect.

Here, not only were any extraordinary circumstances that might have negated the implied sexist familiarity proffered by the accused's remark absent, but, to the contrary, several attendant circumstances verified that the accused meant to imply such sexist familiarity by his remark. The officer, assigned to the same squadron as the accused, was both known to him and in uniform. Furthermore, almost immediately after the accused was orally reprimanded by his superior female commissioned officer, he screamed up a stairwell to fellow enlisted men, a remark about the Lieutenant being a rotten or stinking "pussy."

Clearly under the circumstances of this case, the accused was properly convicted of being disrespectful to a superior commissioned officer by saying "Hi sweetheart," or words to that effect.

## THE EFFECT OF A TWO MINUTE SUBSTANTIAL OMISSION UPON A SUBSTANTIALLY VERBATIM RECORD OF TRIAL

■ At arraignment the accused pled not guilty to the disrespect charge as it was originally worded, to wit: "in that [the accused] ... did ... behave himself with disrespect toward [the lieutenant] ... by saying to her, "Hi sweetheart," and "I heard that Lieutenant's pussy stank."

The record clearly reflects that the theory used by the defense in defending against this specification consisted of an assertion that the accused's use of the words "Hi sweetheart," absent the additional words "I heard that Lieutenant's pussy stank," did not constitute the offense of disrespect to a superior commissioned officer. Accordingly, the defense called two witnesses and the accused to establish that the latter words, although uttered, were not directed to the Lieutenant (instead they were directed up a stairwell to airmen on other floors of the building where the incident occurred).

Each of the three witnesses testified to essentially this same version of the facts. The accused admitted he directed his remark of "Hi sweetheart" to the Lieutenant, but asserted he directed his additional remark to airmen in the stairwell above. The two witnesses testified that the accused admitted to them that he had directed the "Hi sweetheart" remark to the Lieutenant and that the accused's second remark had been directed to them.

The military judge, in his findings,* obviously accepted that portion of the defense's theory relating to the facts attendant to the accused's second remark. Similarly apparent, however, is the fact that he rejected that portion of its theory which related to the remaining remark's sufficiency to state an offense.

During the accused's testimony, relating to this theory, both the primary and backup recording devices failed for approximately two minutes or for about one-tenth of the entire period during which he testified.

The failure was first noted by the court reporter three days following trial when she reached that point in her preparation of a verbatim transcript of the trial record. Eleven days later (14 days after trial) she reconstructed the missing testimony with the assistance of trial defense counsel. The record, containing the reconstructed portion of the accused's missing testimony was then read by the government trial counsel, the trial defense counsel, and the military judge. The government trial counsel "read and approved the record"; the trial defense counsel swore that he had assisted by providing as many of the "topics and gist of the questions" as he could "remember at the time," and the military judge, via a certificate of correction, stated that the reconstruction was consistent with his "recollection of the events and the testimony at trial." The court reporter, after averring in a sworn affidavit that she "added nothing to the transcription based solely on my own recollection," went on to aver that to the best of her knowledge and belief, the reconstructed portion of the record of trial "is complete and accurate."

A line by line analysis of the reconstruction in light of the just referenced statements demonstrates that: the trial defense counsel acknowledged specifically recalling the questions and answers at page 38, lines 23–29; the military judge specifically recalled the accused's answer and his own subsequent cautioning reflected at page 38, lines 31–33; and the court reporter specifically recalled the questions and answers provided at page 38, lines 30–33, and at page 39, lines number 2 and 9. Although not specifically indicated by trial defense counsel, the court reporter's affidavit leaves no question that the remaining 19 lines of reconstructed testimony was based directly upon his recollections.

We also note that a fair oral reading of the reconstructed testimony, with no substantial hesitations takes approximately one minute and 45 seconds. Certainly considering, those hesitations which seem to be an inherent part of any trial examination, there was little time during the 2 minute failure of recording equipment for the accused to have said much else.

---

* The military judge announced his findings as to the specification of this charge in the following manner:

Of the Specification of Charge I: Guilty, except the words, "And, I heard that Lieutenant's pussy stank," of the excepted words, Not Guilty; of the Specification; Guilty, and of the Charge; Guilty.

Against this factual background, the accused claims that his bad conduct discharge cannot now be effectuated, because the two minute breakdown in recording equipment rendered his record of trial other than a substantially verbatim one.

We disagree.

Certainly, any two minute loss of an accused's testimony regarding the merits of his case constitutes a substantial omission from the record. *See United States v. Lashley,* 14 M.J. 7 (C.M.A.1982); *United States v. Eichenlaub,* 11 M.J. 239 (C.M.A. 1981); *United States v. Sturdivant,* 1 M.J. 256 (C.M.A.1976).

However, here, the government successfully rebutted the presumption of prejudice that ordinarily flows from such an omission. Hence, the fact that the omission, itself, occurred does not render this otherwise verbatim record of trial non-verbatim within the meaning of U.C.M.J., Article 54(a), 10 U.S.C. § 854(a). *See United States v. Lashley, supra; United States v. Eichenlaub, supra; United States v. McCullah,* 11 M.J. 234 (C.M.A.1981); *United States v. Gray,* 7 M.J. 296 (C.M.A.1979); *United States v. Boxdale,* 22 U.S.C.M.A. 414, 47 C.M.R. 351, 352 (1973); *United States v. Platt,* 21 U.S.C. M.A. 16, 44 C.M.R. 70 (1972); *United States v. Nelson,* 3 U.S.C.M.A. 482, 13 C.M.R. 38 (1953); *United States v. English,* 50 C.M.R. 824 (A.F.C.M.R.1975).

The quantity of testimony not recorded word for word in this instance was not only minimal, but the substance of its entirety was very clearly identified in a reconstruction effort participated in by the accused's defense counsel and verified by combinations of the other parties to the trial. *See United States v. Lashley, supra; United States v. Garman,* 11 M.J. 832 (A.F.C.M.R. 1981); *United States v. Congram,* 9 M.J. 778 (A.F.C.M.R.1980); *United States v. De-Wayne,* 7 M.J. 755 (A.C.M.R.1979); *United States v. Hensley,* 7 M.J. 740 (A.F.C.M.R. 1979); *United States v. Pearson,* 6 M.J. 953 (A.C.M.R.1979).

The substance of the two minutes of reconstructed testimony was cumulative, not only with other recorded portions of the accused's own testimony, but also with the recorded testimony of two other defense witnesses called to testify about the identical matters covered by the accused. *See United States v. Garman, supra; United States v. Hensley, supra; United States v. Pearson, supra.*

The substance not only of the missing testimony, but of all the testimony of the accused and the other two defense witnesses, related to a defense theory accepted by the military judge as true and upon which he based his findings of fact. (All testified that the accused directed his remark of "Hi sweetheart," to the Lieutenant and all testified that he directed his remark about the Lieutenant being "a rotten pussy," to the other two defense witnesses. The military judge, by exceptions, found the accused guilty of making the first remark and not guilty of making the second.) *See United States v. Hensley, supra.*

Consequently, it is clear to us that despite the substantial omission from the transcript that occurred in this case, the record of trial remains, nevertheless, *substantially* verbatim. *See United States v. Lashley, supra.* The bad conduct discharge not only may, but based upon our evaluation of the seriousness of the accused's conduct should, be executed.

Accordingly, the findings and sentence as approved below are

AFFIRMED.

HODGSON, Chief Judge, and HEMINGWAY, Senior Judge, concur.